## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT FRANKFORT

**CIVIL ACTION NO. 12-63-WOB-CJS**

**SAMUEL CLINTON DURHAM**                                                                 **PLAINTIFF**


**v.**                                 **REPORT AND RECOMMENDATION**


**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY[1]**                        **DEFENDANT**


\* \* \* \* \* \* \* \* \* \*

Plaintiff Samuel Durham brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying his application for benefits under Title II of the Social Security Act.  This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  (R. 3).  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and, therefore, not entitled to benefits.  As explained below, the ALJ's decision was supported by substantial evidence.  It will therefore be **recommended** that Plaintiff's Motion for Summary Judgment (R. 7) be **denied** and the Commissioner's Motion for Summary Judgment (R. 8) be **granted**.

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for Michael J. Astrue as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

## I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Blakley*, 581 F.3d at 406.  "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached.  *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity."  *Vance*, 260 F. App'x at 803 (citing 20

2

C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment.  *Id*. at 803-04.  "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'"  *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app'x 1, then the claimant is presumed disabled regardless of age, education or work experience.  *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work.  *Id*.  Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy.  *Id*. (citing *Abbott*, 905 F.2d at 923).  Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.  *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 31, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits.  (A.R. 12).  He claimed disability beginning on September 30, 2008, based on Post Traumatic Stress Disorder (PTSD) and lower back pain.  (*Id*. at 12, 165, 212, 225). He was forty-five years old at the time of the alleged disability onset date, had at least a high school education, and had past relevant work as a state trooper and state detective.  (*Id*. at 20-21, 64-65, 149, 169).  His claim was denied initially and upon reconsideration.  (*Id*. at 12).  Plaintiff then filed a request for a hearing before an ALJ, and this hearing was held on September 22, 2010.  (*Id*.).

3

Vocational expert Christopher Ryman testified at this hearing, and Plaintiff was represented by non-attorney Julia Simpson.  (*Id.*).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled.  (*See* A.R. 12-14).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since September 30, 2008, the alleged onset date.  (*Id.* at 14).  The ALJ also noted that Plaintiff met the SSA insured status requirements through December 31, 2013.  (*Id.* at 12).

At step two, the ALJ determined that Plaintiff had the severe impairments of mechanical back pain, anxiety, and morbid obesity.  (A.R. 14).  The ALJ also noted that Roger Strunk, M.D., Plaintiff's primary care physician, had diagnosed Plaintiff with an aortic valve disorder, high triglycerides, hyper-lymphedema, and high blood pressure.  (*Id.*).  But the ALJ stated that these latter impairments, singly or in combination, were not severe.  (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the applicable Federal Regulations.  (A.R. 14).

At step four, the ALJ considered the evidence and determined that Plaintiff had the residual functioning capacity (RFC) to perform jobs at the light exertional level, subject to several limitations.  (*See* A.R. 17-18).  The ALJ heard testimony from the VE, who stated that based on the RFC provided by the ALJ, Plaintiff could not perform any past relevant work.  (*Id.* at 20-21, 64-72).

The ALJ proceeded to step five and adopted the VE's opinion that, given the stated RFC, there were other jobs in the national economy that Plaintiff would be able to perform, namely clerical data entry work reduced fifty percent because of non-exertional limitations, and weighing and

4

checking. (*See* A.R. 21). Accordingly, on October 15, 2010, the ALJ determined that Plaintiff was not "disabled," for social security purposes. (*Id.* 22).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. On July 27, 2012, the Appeals Council affirmed the ALJ's determination, thereby rendering the ALJ's October 15, 2010, decision denying Plaintiff benefits the final decision of the Commissioner. (A.R. 1-3). On September 25, 2012, Plaintiff, having exhausted his administrative remedies, timely filed a Complaint asserting that the ALJ's decision was erroneous. (*See* R. 1). The matter has culminated in cross-motions for summary judgment. (R. 7-8). These Motions have been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) (R. 3), and the Motions are now ripe for consideration.

## III.   ANALYSIS

Plaintiff claims that the ALJ erred in three ways: (1) he did not give proper weight to the opinions of several medical sources, thus violating the treating physician rule; (2) he did not fairly consider Plaintiff's subjective complaints; and (3) his RFC determination was not based on substantial evidence. But the record indicates that the ALJ assigned proper weight to the various medical sources and to Plaintiff's subjective complaints, and the RFC was based on substantial evidence. Therefore, Plaintiff's arguments fail.

### A.   The ALJ properly assigned weight to the medical sources.

In evaluating opinion evidence under 20 C.F.R. § 404.1527(c), the opinions of treating physicians are given substantial, if not controlling, deference in social security disability proceedings. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted); 20 C.F.R. § 404.1527(c)(2). An ALJ must give the opinion of a treating source controlling weight if he finds

5

the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques"
and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R.
§ 404.1527(c)(2).

Moreover, if a treating physician's opinion is not given controlling weight, "the medical
opinion of a treating physician must be accorded greater weight than those of physicians employed
by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.
1988) (citations omitted).  But the opinion of a treating physician is entitled to greater weight only
if it is based on sufficient medical data, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365,
367 (6th Cir. 1984), and is not contradicted by substantial evidence to the contrary.  *Loy v. Secretary*,
901 F.2d 1306, 1308-09 (6th Cir. 1990).  Thus, the Commissioner is not bound by the opinion of a
treating physician when the opinion is contradicted by objective medical evidence.  *Cohen v.
Secretary*, 964 F.2d 524, 528 (6th Cir. 1992).  Yet 20 C.F.R. § 1527(c)(2) also contains a clear
procedural requirement: an ALJ must give good reasons for rejecting the opinions of treating
physicians.  *See also Wilson,* 378 F.3d at 544.  These reasons must be "supported by the evidence
in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the
weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."
*Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. (SSR) No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec.
Admin. July 2, 1996)).  This procedural requirement "ensures that the ALJ applies the treating
physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson*, 378
F.3d at 544 (citations omitted).

**1.      The ALJ properly assigned "little weight" to Dr. Strunk's opinion.**

Dr. Strunk was Plaintiff's primary treating physician, who noted in a report signed on December 9, 2009,[2] that Plaintiff was "totally disabled from performing his previous occupation," and was "totally disabled from working at any other occupation . . . outside of [his] former occupation." (*See* A.R. 14, 469). Dr. Strunk indicated that Plaintiff could stand for one hour, sit for two hours, drive for four hours, and walk for one hour per day. (*Id.* at 469). Moreover, Dr. Strunk crossed through the section of the report labeled "work capacity," and indicated that this section was not applicable. (*See id.* at 469).

The ALJ assigned Dr. Strunk's opinion "little weight," noting, "[h]is assessment is not supported with the objective evidence of record as a whole and with clinical findings." (A.R. 20). For instance, the ALJ noted that Dr. Strunk had severely limited Plaintiff's activity level, yet an MRI of Plaintiff's lumbar spine showed "multi-level degenerative disc disease with no high-grade stenosis of the central canal or neural-foraminal narrowing." (*Id.* at 20, 459 (report of William H. Brooks, M.D.)). The ALJ then noted how Plaintiff's testimony conflicted with Dr. Strunk's observations:

> The claimant remains active and able to engage in routine activities such as fishing, walking, exercising and he does routine household chores. He last rode his Harley Davidson motorcycle about three months prior to the hearing. He rode twelve miles but testified that he does not ride it any longer. He went fishing five or six months prior to the hearing and caught a couple of fish. He watches television much of the day, watching the History and Discovery channels. He shops three to four times a week. His wife has a heart condition and presumably she is unable to do strenuous activities. He checks e-mail messages on his computer. He visits friends and relatives weekly. He eats out once a month. He can feed dress and bathe without difficulty and he exercises 40 minutes every other day. He said he takes naps twice a day but does not sleep well at night. The claimant's activity level is not commensurate with the sedentary rating of Dr. Strunk.

_____

[2]The report is dated November 13, 2009 (A.R. 470); however, Dr. Strunk signed the document on December 9, 2009 (*Id.* at 471).

(*Id.* at 20).  Lastly, the ALJ noted that Plaintiff was able to lift and carry 5-10 pounds, and Plaintiff had successfully qualified for a concealed weapons permit four months before the hearing.  (*Id.* at 18).

Plaintiff argues that the ALJ's determination as to Dr. Strunk's opinion was erroneous.  First, Plaintiff claims, "The miniscule [sic] analysis of the reason to dismiss Dr. Strunk's opinion is certainly violative of SSR 96-2p."  (R. 7, at 9).  Second, Plaintiff faults the ALJ for stating that the State agency opinions are consistent and supported by objective evidence.  (*Id.*).  Third, Plaintiff criticizes the ALJ for "conveniently and improperly ignor[ing]" Richard Lingreen, M.D.'s diagnosis and Dr. Brooks's note that Plaintiff was unable to return to work.  (*See id.* at 10).  Plaintiff contends that these documents support Dr. Strunk's opinion that Plaintiff was disabled.  (*See id.*).

Upon consideration, the ALJ properly assigned little weight to Dr. Strunk's opinion.  As an initial note, a medical source opinion on an "issue reserved to the Commissioner"—such as whether a plaintiff is "disabled"—is "not [a] medical opinion," and "does not mean that [the Commissioner] will determine that [a plaintiff is] disabled."  20 C.F.R. § 404.1527(d); *see also Warner*, 375 F.3d at 390 ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." (brackets, citations, and quotation marks omitted)).  Thus, Dr. Strunk's indication that Plaintiff was disabled did not control the ALJ's disability determination.  Next, and as noted above, if an ALJ decides to reject the opinion of a treating physician, he must give good reasons for doing so.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Here, the ALJ gave little weight to Dr. Strunk's opinion because neither Dr. Brooks's MRI report from July 2009, nor Plaintiff's testimony at the hearing in September 2010, supported Dr. Strunk's disability determination.  (*See* A.R. 20); *cf. Gayheart*, 710 F.3d at 377 (noting that the ALJ

8

improperly failed to identify the substantial medical evidence that was allegedly inconsistent with the treating physician's opinions).  While Dr. Strunk said that Plaintiff was totally disabled, the MRI revealed that Plaintiff did not have high grade stenosis of the central canal or neural foramen.  (*See* A.R. 459).  And the ALJ decided that Plaintiff's testimony at the hearing undermined Dr. Strunk's opinion because Plaintiff described engaging in numerous routine activities on a regular basis, such as exercising and shopping.

### Drs. Lingreen and Brooks

While the ALJ did not explicitly mention in his opinion the diagnosis from Dr. Lingreen and the note from Dr. Brooks, the ALJ did indicate that he considered Exhibit 12F as part of his analysis of Dr. Strunk's opinion, and the relevant documents from Drs. Lingreen and Brooks are contained within Exhibit 12F.  (*See* A.R. 20, 462-63, 465).  The ALJ also mentioned Dr. Lingreen's diagnosis at the hearing.  (*See id.* at 47-49).  Therefore, Plaintiff has not shown that the ALJ ignored these two documents.  Furthermore, the two documents do not support Dr. Strunk's opinion, contrary to Plaintiff's suggestion.  Dr. Lingreen, a pain specialist, examined Plaintiff on August 7, 2009, upon a referral from Dr. Brooks.  (*See id.* at 462-63, 465).  Dr. Lingreen said that Plaintiff suffered from "lumbar radiculopathy, lumbar degeneration disk disease, and lumbar sciatica with ongoing narcotic dependence for ongoing pain management."  (*Id.* at 462).  But in the preceding paragraph of the report, Dr. Lingreen made the following observation:

> Side effects are none ongoing to [pain] medications and physical examination is that of a robust retired State Patrolman who has positive straight leg raising test particularly on the right side greater than the left otherwise there is no real pain generators noted.  He does not seem to be benefitting from the therapy on an ongoing basis but his functionality is stable.

(*Id*.).  Included in the record is Dr. Lingreen's clinical evaluation form, upon which Dr. Lingreen based his report.  (*See id.* at 464).  On this form, Dr. Lingreen noted that Plaintiff had a full range of motion in his neck, and was "well developed, well nourished, [and was under] no acute distress." (*Id*.).  Dr. Lingreen's observations, therefore, do not support Dr. Strunk's opinion which placed severe restrictions on Plaintiff's physical functionality.  Rather, while Plaintiff suffered from several adverse mechanical conditions (*e.g.*, sciatica), according to Dr. Lingreen, he was "robust" and "functionally stable."

Dr. Brooks performed an MRI on Plaintiff, upon referral from Dr. Strunk.  (*See* A.R. 457). Dr. Brooks's note from August 27, 2009, indicates that Plaintiff had not been released to return to work (*id*. at 465), and Plaintiff therefore claims that the note supports Dr. Strunk's opinion (*see* R. 7, at 10).  Plaintiff failed to mention, however, that in this same note, Dr. Brooks expected Plaintiff's condition to improve.  (*See* A.R. 465 (In reference to the form question, "What do you expect regarding this condition," Dr. Brooks checked the box, "Improvement.")).  So, Dr. Brooks's note does not entirely support Dr. Strunk's opinion.

In short, the ALJ appropriately assigned little weight to Dr. Strunk's opinion because the opinion was inconsistent with other substantial evidence in the record, namely Dr. Brooks's MRI report and Plaintiff's testimony.  *See* SSR 96-2p, at *1.

### 2.     The ALJ appropriately assigned "little weight" to Dr. Patton's opinion.

Dr. Patton was Plaintiff's treating mental health specialist (R. 7, at 10), and the record contains a report from Dr. Patton, dated April 26, 2010.  (A.R. 323-26).  The report is in the form of a checklist of patient "signs and symptoms," "general limitations caused by psychiatric condition,"

and "work limitations related to psychiatric state." (*See id.*).  Dr. Patton checked boxes indicating

that Plaintiff had marked to extreme impairments in numerous categories.  (*See id.* at 323-25).

The ALJ assigned Dr. Patton's opinion "little weight," noting,

> Dr. Patton diagnosed the claimant with an adjustment disorder and [Global
> Assessment of Functioning (GAF)[3] score] of 85 representative of little to no
> occupational and social functioning difficulties (Exhibit 13F).  Despite his checklist
> of symptoms, Dr. Patton's treatment notes were not consistent with marked
> symptoms and limitations.  He contradicted himself with a GAF that indicates little
> or [no] functioning difficulties and his medical treatment notes repeatedly reported
> much improvement in depression anxiety and [PTSD] symptoms (Exhibit 10F, 11F,
> 13F).  Therefore, the [ALJ] gives little weight to the mental residual functional
> capacity of marked to extreme limitations given by Dr. Patton (Exhibit 12F).

(*Id*. at 20).

Plaintiff argues that the ALJ should have given more weight to Dr. Patton's opinion.  (R. 7,

at 10).  As noted above, Dr. Patton indicated in a report from April 26, 2010, that Plaintiff suffered

from "marked" to "extreme" symptoms which questioned Plaintiff's ability to do work.  (*See*

A.R. 323-26).  The ALJ, says Plaintiff, improperly relied on GAF scores to discredit Dr. Patton's

opinion, and the ALJ failed to provide specific references to the record in making his credibility

determination.  (R. 7, at 10).

Plaintiff's arguments are unpersuasive.  First, the ALJ's reference to Exhibits 10F, 11F, and

13F,[4] the reference to the "checklist of symptoms," and the mention of the GAF scores provide

---

[3]"The GAF score is a subjective determination that represents 'the clinician's judgment of the
individual's overall level of functioning.'"  *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415, (6th
Cir. 2006) (quotation marks and citation omitted).  "A GAF score may help an ALJ assess mental RFC, but
it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms
into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy
v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citation omitted).

[4] Exhibit 10F is Dr. Patton's medical report from April 26, 2010.  (A.R. 322).  Exhibit 11F consists
of Dr. Patton's treatment records from December 10, 2007, through June 1, 2009.  (*Id*. at 327).  And Exhibit
13F contains Dr. Patton's treatment notes from February 22, 2010, through May 25, 2010.  (*Id*. at 473, 477).

sufficient explanation for the ALJ's opinion.  *See Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 753 (6th Cir. 2012) (noting, "While the ALJ's explanation is short and somewhat lacking in specificity and thoroughness, in this case it complied with the reasons-giving requirement").

Second, the ALJ permissibly used GAF scores to discredit Dr. Patton's opinion.  In a "medical check progress note" from February 22, 2010, Dr. Patton assigned Plaintiff a GAF score of 85 and noted that Plaintiff had a past GAF score of 60.  (*See* A.R. 474).  A GAF score of 85 means that there are "[a]bsent or minimal symptoms . . . good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns."  *American Psychiatric Ass'n*, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000).  A GAF score of 60 means that the patient suffers from "[m]oderate symptoms . . . [or] moderate difficulty in social, occupational, or school functioning."  *Id.*; *see also Kennedy*, 247 F. App'x at 766 (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006)).  As noted by the ALJ, these GAF scores, which indicate minimal to moderate limitations, stand in clear contrast to the "marked" to "extreme" impairments which Dr. Patton described in the April 26, 2010, report.

Plaintiff argues that the ALJ's reliance on those scores is contrary to the Commissioner's own rules.  In support, he points to the Sixth Circuit's decision in *DeBoard*, in which the appellate court stated, "the Commissioner 'has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.'"  211 F. App'x at 415 (quotation marks and citation omitted).  But Plaintiff has misconstrued *DeBoard*.  While a GAF score is not "raw medical data," *Kennedy*, 247 F. App'x at 766, it may be used "for the

permissible purpose of analyzing the reliability and internal consistency of [the treating source's] assessment," *see Jeffries v. Astrue*, Civ. No. 10-136-DLB, 2011 WL 2457546, at *4 (E.D. Ky. June 16, 2011); *Couch v. Astrue*, Civ. No. 10-10-DLB, 2011 WL 690499, at *6 (E.D. Ky. Feb. 18, 2011); *but see Smith v. Astrue*, 565 F. Supp. 2d 918, 924-25 (M.D. Tenn. 2008) (noting that a GAF score, alone, cannot be used to discredit a treating source's opinion).   Accordingly, the ALJ permissibly used the GAF scores to discredit Dr. Patton's opinion.

Third, the ALJ properly determined that Dr. Patton's treatment notes (in addition to the previously discussed GAF scores) contradicted Dr. Patton's opinion that Plaintiff suffered from "marked" to "extreme" symptoms.  These notes reveal improvements in Plaintiff's psychological function—including several instances where the symptoms were in full or partial remission— although Plaintiff did suffer from a recurrence in April 2010.  For instance, on February 2, 2009, Plaintiff reported having "significant anxiety and panic.  Having night sweats, [and] night terrors. [C]an't ride in the car due to anxiety." (A.R. 336).  But Dr. Patton noted that Plaintiff was in partial remission.  (*Id.*).  On March 17, 2009, Plaintiff's nightmares seemed less intense, and Dr. Patton again noted that Plaintiff was in partial remission.  (*Id.* at 332).  A report from April 14, 2009, says that Plaintiff's "[n]ightmares have lessened in intensity and frequency with introduction of [prescription medication]."  (*Id.* at 329).  On June 1, 2009, Plaintiff was in full remission.  (*Id.* at 328).  The report from February 22, 2010, noted that Plaintiff's anxiety had decreased, and he was in partial remission.  (*Id.* at 473).  The Court has already discussed the April 26, 2010, report from Dr. Patton, which noted marked to extreme symptoms.  Two days after this report, on April 28, 2010, Dr. Patton stated that Plaintiff's symptoms were in recurrence.  (*Id.* at 476).

13

Upon consideration of the record, the ALJ properly discounted Dr. Patton's opinion. The GAF scores, which indicated mild to moderate functional limitations, contradicted Dr. Patton's assessment of marked to extreme symptoms. So too did the treatment notes which indicated that Plaintiff had been in full or partial remission. While the ALJ did not address Dr. Patton's opinion at great length, the ALJ permissibly assigned Dr. Patton's opinion "little weight" because it was inconsistent with other substantial evidence in the case record. *See Miller v. Comm'r of Soc. Sec.*, No. 12-3644, 2013 WL 1705026, at *2 (6th Cir. Apr. 22, 2013) (noting that an ALJ may properly discount a treating physician's opinion where the opinion conflicted with the physician's treatment records and "other evidence demonstrating that [the claimant] was able to engage in significant daily activities") (citing *Blakley*, 581 F.3d at 406)); SSR 96-2p, at *1.

### 3. The ALJ properly assigned "great weight" to the State agency opinions.

Plaintiff argues that the State agency opinions are neither consistent nor supported by the objective evidence; therefore, the ALJ should not have assigned great weight to these opinions. (*See* R. 7, at 9).

The Court disagrees with this argument. The ALJ noted that he based the RFC, "primarily on findings of fact opinions of state agency physicians and consultative psychological opinion reports (Exhibit 5F, 7F). Their findings and opinions are substantiated by the record as a whole with no material inconsistency; thus their opinion evidence is given great weight herein." (A.R. 20). The following analysis will examine these State agency opinions.

Consultative examiner Mark Burns, M.D., conducted a medical examination of Plaintiff on June 17, 2009. (A.R. 249). Dr. Burns said that Plaintiff had the ability "to perform activities

involving sitting, standing, hearing, seeing, and speaking," although Plaintiff had several limitations on his physical functioning.  (*See id.* at 251).

Consultative examiner Marc Plavin, Ph.D., provided a report dated June 26, 2009. (A.R. 255).  Plaintiff drove himself, unaccompanied, the thirty miles to the appointment.  (*Id.* at 256).  He told Dr. Plavin that, with the use of medication, his sleep was "not bad," and Plaintiff estimated that he slept between six and eight hours a night.  (*Id.*).  Plaintiff also said that he "got along well with coworkers and supervisors and was able to follow work-related rules."  (*Id.* at 259). Dr. Plavin noted that Plaintiff was "neatly groomed," walked with an even gait, sat upright on the couch, and "related well" to Dr. Plavin.  (*Id.* at 256).  Dr. Plavin said that Plaintiff had good ability to deal with activities of daily living, complete tasks, and remember and understand instructions. (*Id.* at 261).  Plaintiff had fair ability to act socially, tolerate stress, show sustained concentration and persistence on tasks, interact with people at work, and respond to pressures of day-to-day work settings.  (*Id.*).  Dr. Plavin then stated that Plaintiff's prognosis was "guarded."  (*Id.*).

Edward Stodola, Ph.D., completed a psychiatric review technique and mental residual functional capacity assessment on July 14, 2009, which noted that Plaintiff suffered from anxiety. (A.R. 271, 276, 285).  Dr. Stodola noted mild to moderate functional limitations regarding activities of daily living, social functioning, and concentration, persistence, or pace.  (*Id.* at 281, 285, 287).

On September 10, 2009, Ann Hess, Ph.D., also completed a psychiatric review technique and mental residual functional capacity assessment.  (A.R. 296, 310).  Dr. Hess determined that Plaintiff suffered from anxiety, and as with Dr. Stodola, she stated that Plaintiff had mild to moderate functional limitations regarding activities of daily living, social functioning, and concentration, persistence, or pace.  (*Id.* at 306).  Dr. Hess affirmed Dr. Stodola's opinion.  (*Id.* at 312).

15

And on September 11, 2009, Alex Guerrero, M.D., a medical consultant, reviewed the medical evidence in the record and produced a physical residual functional capacity assessment. (*See* A.R. 314-15, 321).  Dr. Guerrero said that Dr. Burns's opinion was "too restrictive based on [the medical evidence] on file and physical findings on exam."  (*Id.* at 320).  Plaintiff claims that these words undermine Dr. Burns's determination.  (*See* R. 7, at 9).

Contrary to Plaintiff's assertions, these opinions are not materially inconsistent, and they are based on substantial evidence.  The consultative opinions, in total, consistently note mild to moderate physical and psychological limitations.  While Dr. Burns and Dr. Guerrero disagreed as to the extent of those limitations, their disagreement does not call into question a recurring theme amongst the State agency opinions of, at most, moderate limitations on Plaintiff's functioning. Therefore, the ALJ properly accorded "great weight" to the State agency opinions.

### B.  The ALJ properly discounted Plaintiff's subjective complaints.

Plaintiff argues that the ALJ did not "fairly credit or accurately characterize [Plaintiff's] testimony."  (R. 7, at 11).  Plaintiff objects to the ALJ's characterization of several portions of Plaintiff's testimony at the hearing, and he adds that, contrary to the ALJ's determination, his testimony was in fact consistent with the limitations that Dr. Strunk had imposed on him.  (*See id.* at 11-13).

These arguments are unpersuasive.  A claimant's statements as to "pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a).  An ALJ can discredit a plaintiff's credibility if the record contains contradictions among the medical reports, claimant's testimony, and other evidence, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted); however, the ALJ must consider the entire case record, *Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007).  Moreover, "[Federal Regulations] require the ALJ explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248 (quotation marks omitted).  An ALJ's determinations regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531 (citation omitted).  Again, this Court is limited to evaluating whether or not the ALJ's determination is supported by substantial evidence.  *Id.*

First, the ALJ accurately described Plaintiff's activities.  Plaintiff testified to doing the following: fishing for "an hour or 45 minutes," standing or sitting for a couple of hours from the riverbank, five or six months before the hearing (A.R. 59-60); exercising for forty minutes, every other day (*id.* at 51); doing laundry and dishes (*id.* at 50); riding a motorcycle for twelve miles, three months before the hearing (*id.* at 52); qualifying for a concealed weapons permit, four months before the hearing (*id.* at 53); watching television much of the day (*id.* at 50, 61); going grocery shopping three to four times a week (*id.* at 55); and taking naps twice a day, but not sleeping well at night (*id.* at 60).  The ALJ appropriately described these activities in the opinion.  (*See id.* at 16-18).

Plaintiff claims that the ALJ erroneously said that Plaintiff "visits friends and relatives weekly."  (R. 7, at 13; *see* A.R. 20).  Plaintiff's argument is faulty.  Plaintiff did say at the hearing that he "sometimes [visited friends or relatives] on the weekend, very seldom."  (A.R. 51).  But Plaintiff also told Dr. Plavin that he saw his friends twice a week, occasionally saw his twenty-three-year-old son, and saw his younger son once a week.  (*Id.* at 260).  Moreover, Plaintiff's wife said that Plaintiff interacts with direct family members on a daily basis.  (*Id.* at 199).  Therefore, this argument

17

fails because the record demonstrates that Plaintiff visited with friends and relatives on a weekly basis, and the ALJ indicated this in the opinion.

Second, the ALJ properly discounted Plaintiff's subjective complaints. Plaintiff claimed that his work as a detective in the digital crimes unit had psychologically traumatized him. (*See* A.R. 183). Moreover, he claimed that he suffered from back pain. (*See id*. at 18, 49, 59). The ALJ noted that Plaintiff was involved in a motor vehicle accident on January 20, 2010 (after Plaintiff applied for disability), and that he complained of back pain upon any movement. (*Id*. at 18). Plaintiff testified that his pain level was 6/10 without medication, and 3/10 with medication. (*Id*. at 49).

The ALJ analyzed Plaintiff's subjective complaints and noted inconsistencies between those complaints and the objective medical record. For instance, the ALJ noted that Plaintiff worked in the Digital Crimes unit for eight years, and while Plaintiff had the option of returning to patrol duty or to general detective work, he chose to retire after twenty-two years of service—two years beyond the normal retirement age. (A.R. 19). Had Plaintiff made a lateral move within the police department, he would have received the same salary as when he worked in the digital crimes unit. (*Id*.). But "[Plaintiff] believed he would no longer be able to take the pressure of returning to the uniform trooper job and [he] elected to stay in the child sexual crimes work which he found distasteful and an emotional drain" for eight years. (*Id*.). The ALJ firmly rejected Plaintiff's logic, noting, "It is not credible that he remained for eight years in the job which he alleged was crippling him emotionally and mentally when he had the option at any time to get out of this job and return to the road trooper/uniform job at no cut in pay. Alternatively, he could have asked to do general detective work if he wanted." (*Id*.).

18

The ALJ also noted the discrepancies between Plaintiff's activity level and the claimed intensity, persistence, and limiting effects of his physical symptoms. (*See* A.R. 18). As noted above, Plaintiff engaged in a variety of activities, including exercise, shopping, and visiting with friends. And contrary to Plaintiff's assertions, his testimony about these activities is not consistent with the severe limitations imposed by Dr. Strunk. Rather, these activities rose above the level of "somewhat minimal daily functions," *cf. Rogers*, 486 F.3d at 248-49, and were conducted on a "sustained basis," *cf. Gayheart*, 710 F.3d at 377.

Accordingly, the ALJ said that he found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]" for light work with additional limitations (see below). (*See* A.R. 18). The ALJ properly discounted Plaintiff's subjective complaints because the record contained contradictions among the medical reports and the subjective complaints. The ALJ's credibility determination was based on the entire case record, and the ALJ's decision was "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

## C.     The Residual Functional Capacity determination was supported by substantial evidence.

Finally, Plaintiff argues that the RFC for light work was not supported by substantial evidence. (*See* R. 7, at 6).

Plaintiff's argument fails. The RFC was as follows:

The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour day; sit six hours in an eight-hour day; limits on pushing and pulling with lower extremities; avoid climbing ropes, scaffolds and ladders; frequent climbing ramps and stairs; occasional balancing, stooping, crouching, kneeling and crawling; limits on extreme cold, vibration and hazardous machinery and heights; limits on overhead reaching with upper left extremity but no limitation with upper right extremity.  The claimant is able to understand, remember and carry out detailed instructions; sustain concentration and persistence to carry out detailed instructions for two hours segments over an eight-hour workday, five days a week; relate adequately in work settings; and adapt to the changes and pressures of a routine setting.  He is moderately limited in sustaining concentration and persistence to carry out detailed instructions and maintaining attention and concentration for extended periods.  He has [the] ability to respond appropriately to changes in the work setting.

(A.R. 17-18).  The Court has indicated above that the ALJ reasonably determined the credible medical evidence and appropriately assigned weights of persuasiveness to these sources.  Based upon that credible medical evidence, the ALJ duly considered all of Plaintiff's alleged symptoms in crafting the RFC.  Indeed, the ALJ noted that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[, in accordance with the applicable Federal Regulations]."  And the ALJ said that he had "also considered opinion evidence in accordance with the [applicable Federal Regulations]." (*Id*. at 18).  For all of these reasons, the ALJ did not err in assessing Plaintiff's RFC.

## IV.    CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed.  Accordingly, **IT IS RECOMMENDED** that:

1.    The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed;**

2.    Plaintiff's Motion for Summary Judgment (R. 7) be **denied;**

3.    Defendant's Motion for Summary Judgment (R. 8) be **granted;** and,

4.      This matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir.), *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within **fourteen (14) days** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 27th day of June, 2013.



**Signed By:**

***Candace J. Smith***

**United States Magistrate Judge**

G:\DATA\social security\12-63 Durham R&R.wpd

21